KEEFE M. BERNSTEIN*
bernsteink@sec.gov
B. DAVID FRASER*
fraserb@sec.gov
SECURITIES AND EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2607

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ONE OR MORE UNKNOWN TRADERS IN THE SECURITIES OF ANADARKO PETROLEUM CORPORATION,<br><br>Defendants. | 19 Civ. _____ (____)<br><br>ECF CASE |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against One or More Unknown Traders in the Securities of Anadarko Petroleum Corporation ("Defendants"), alleges as follows:

### I.   SUMMARY OF THE ACTION

1. This is an insider trading case involving highly suspicious trading by one or more unknown traders in call option contracts ("calls") of Anadarko Petroleum Corporation (NYSE: APC) ("Anadarko" or "APC") prior to the April 12, 2019 announcement ("Announcement") that Chevron Corporation ("Chevron") had entered into an agreement to acquire Anadarko for $65 per share.

---

* Not admitted in SDNY, *pro hac vice* application filed herewith.

2. The $65 per-share price represented a premium of approximately 38% over the price at which Anadarko's stock closed on April 11, 2019 ($46.80). Following the Announcement, Anadarko's share price increased substantially. On April 12, 2019, Anadarko shares opened at $63.07, reached a high of $63.23 for the day, and closed at $61.78, a 32% increase over the April 11, 2019 closing price.

3. Defendants are unknown traders that placed their trades through foreign accounts. On information and belief, Defendants are located in or are trading in accounts located in the United Kingdom and Cyprus. In advance of the Announcement, Defendants purchased 1,650 Anadarko calls through one or more accounts at Cowen International Ltd. and Renaissance Securities (Cyprus) Limited.

4. Defendants' purchases of the Anadarko calls were highly suspicious, timely, and lucrative. As detailed below, the calls, with limited exception: (a) were purchased out-of-the-money and shortly before the Announcement; (b) were set to expire in the near term; (c) were purchased while acquisition discussions were active; (d) represented a large percentage of the respective option series; and (e) resulted in, or are in a position to result in, windfall profits. Further, reports from an industry regulator show (f) no Anadarko hedging in the accounts, and (g) no other reportable Anadarko options trading in the accounts during the preceding year.

5. In light of Defendants' large, unprecedented purchases of Anadarko calls before the Announcement, on information and belief, Defendants purchased the calls while in possession of material, nonpublic information concerning a proposed acquisition of Anadarko.

6. The identities of Defendants are not yet known, because the options purchase orders originated from omnibus accounts at foreign brokerage firms located in the United Kingdom and Cyprus. The foreign brokerage firms, in turn, cleared the transactions through

2

U.S. brokerage firms, which in turn executed the purchase orders through the facilities of a U.S.-based options exchange.

7.      Defendants have obtained, or stand to obtain, approximately $2.5 million in illicit profits as a result of the options trading. On information and belief, there is a significant risk that these proceeds of the option trading will be moved overseas shortly.

## II.      NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The SEC brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The SEC seeks permanent injunctions against Defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains obtained as a result of the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The SEC also seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## III.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa]. Defendants have directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

10.     Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York and elsewhere, and were effected, directly or indirectly, by making use of the means or instruments or

3

instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange. Anadarko's common stock is traded on the New York Stock Exchange ("NYSE"), which is located in this District. Venue also lies in this Court pursuant to 28 U.S.C. § 1391(c)(3) because, on information and belief, the Defendants are not residents of the United States.

## IV.   DEFENDANTS

11.   **Certain Unknown Customer(s) of Cowen International Ltd.** Cowen International Ltd. is a boutique investment banking firm based in London, United Kingdom. One or more unknown traders engaged in highly suspicious and highly profitable trading in Anadarko calls through an account located in the United Kingdom in the name of Cowen International Ltd. ("Cowen Account") and an account in the United Kingdom in the name of Cowen International Ltd. for Sun Global ("Cowen-SG Account"), both of which are believed to be omnibus accounts. The relevant trading in these accounts cleared through Pershing, LLC, a domestic clearing firm. The SEC has not yet identified the customer(s) who directed and profited from the relevant trading in these accounts. On information and belief, the customers are located outside of the United States.

12.   **Certain Unknown Customer(s) of Renaissance Securities (Cyprus) Limited.** Renaissance Securities (Cyprus) Limited is an investment banking and securities brokerage services firm based in Cyprus. One or more unknown traders engaged in highly suspicious and highly profitable trading in Anadarko calls through an account located in Cyprus in the name of Renaissance Securities (Cyprus) Limited ("Renaissance Account"), which is believed to be an omnibus account. The relevant trading in the account cleared through Interactive Brokers, LLC, a domestic clearing firm. The SEC has not yet identified the customer(s) who directed and

4

profited from the relevant trading. On information and belief, the customers are located outside of the United States.

## V.  OTHER RELEVANT ENTITIES

13. **Anadarko Petroleum Corporation** is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is a large independent oil and gas exploration and production company. Anadarko's common stock trades on the NYSE under the ticker symbol APC.

14. **Chevron Corporation** is a Delaware corporation headquartered in San Ramon, California. Chevron is a multinational energy company that manages its investments in U.S. and international subsidiaries and affiliates engaged in integrated energy and chemicals operations, including oil and gas exploration, production, processing and transportation. Chevron's common stock trades on the NYSE under the ticker symbol CVX.

15. **Occidental Petroleum Corporation** is Delaware corporation headquartered in Houston, Texas. Occidental Petroleum Corporation ("Occidental") is an international oil and gas exploration and production company and chemical manufacturer. Occidental's common stock trades on the NYSE under the ticker symbol OXY.

## VI.  FACTS

### A.  The Agreement to Acquire Anadarko

16. On February 6, 2019, Chevron's CEO delivered a letter to Anadarko's CEO setting forth Chevron's proposal to acquire Anadarko. Shortly thereafter, Anadarko informed its board of directors ("Board") of the letter and notified various legal and financial advisors of the proposal. On February 18, 2019, Anadarko's Board authorized negotiations with Chevron with respect to a potential transaction. On February 20, 2019, Chevron and Anadarko executed a

Non-Disclosure Agreement ("NDA") and thereafter began the due diligence process. On March 11, 2019, Chevron sent a draft merger agreement to Anadarko.

17.     On March 22, 2019, the CEO of Occidental told the CEO of Anadarko that Occidental would be sending a competing offer to acquire Anadarko. On March 23, 2019, Anadarko received the competing offer from Occidental and informed Chevron that it would consider competing proposals. On March 24, 2019, Chevron disengaged from the negotiating process and Anadarko's Board authorized transaction discussions with Occidental. On March 26, 2019, Anadarko and Occidental executed an NDA. Over the next several days, Anadarko and Occidental engaged in merger discussions and due diligence sessions, including in-person due diligence sessions held on April 1, 2019.

18.     On April 6, 2019, discussions between Chevron and Anadarko resumed and ran parallel to Anadarko's discussions with Occidental. On April 11, 2019, Chevron and Anadarko executed the merger agreement after the market closed. Before the U.S. markets opened on April 12, 2019, Anadarko and Chevron publicly announced an agreement for Chevron to acquire all of the outstanding shares of Anadarko through a tender offer for approximately $33 billion. Under the terms of the agreement, Chevron would pay $65 per share in cash and stock, a 38% premium over Anadarko's April 11, 2019 closing price of $46.80.

19.     As a result of the Announcement, Anadarko's share price increased substantially. On April 12, 2018, Anadarko shares opened at $63.07, reached a high of $63.23 for the day, and closed at $61.78, a 32% increase over its April 11 closing price. Between February 6, 2019 and April 11, 2019 (the day before the Announcement), Anadarko had traded between $41.84 and $47.19, up to the $46.80 closing price on April 11, 2019.

20. Following the April 12, 2019 Announcement, Occidental issued a press release on April 24, 2019, announcing a competing proposal to acquire Anadarko for $76 per share.

**B.     Defendants' Highly Suspicious and Profitable Trading in Anadarko Calls**

21. Equity call options, like the ones traded by Defendants, give a buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike price") for a certain period of time (through "expiration"). In general, one buys a call when one expects the stock price to rise, or sells a call when one expects the stock price to fall. If at the time of purchase the strike price for the call is above the price at which the stock is then trading, the call is "out of the money" because it would be unprofitable to exercise the call and pay more for the stock than if it were purchased on a stock market.

22. Between February 8, 2019 and April 1, 2019, the Defendants purchased 1,650 calls for Anadarko stock, nearly all of which were "out of the money" and had short durations until expiration.

23. In the Cowen Account, on February 8, 2019, two days after Chevron delivered its written proposal to Anadarko, an account holder at Cowen purchased 250 calls, with a strike price of $40 and an expiration date of February 15, 2019, at an average premium of $2.00 per option for a total of $49,875. These option purchases accounted for 55.19% of the call series traded that day.

24. In the Cowen Account, on March 22, 2019, the same day that Occidental's CEO told Anadarko's CEO that Occidental would be sending a competing offer to acquire Anadarko, the account holder purchased 500 out-of-the-money calls, with a strike price of $45 and an expiration date of April 18, 2019, at an average premium of $1.16 per contract for a total cost of $58,000. These option purchases accounted for 57.34% of the call series traded that day.

25. In the Cowen-SG Account, on March 25, 2019, the same day Anadarko and Occidental were working to finalize an NDA, the account holder purchased 250 calls, with a strike price of $45 and an expiration date on April 18, 2019, at an average premium of $.88 per contract for a total cost of $22,000. These option purchases accounted for 34.97% of the call series traded on that day.

26. In the Renaissance Account, on April 1, 2019, the same day as the in-person due diligence sessions between Occidental and Anadarko, the account holder purchased 650 calls, with a strike price of $50 and an expiration date of May 17, 2019, at an average premium of $1.07 per contract for a total cost of $69,550. These option purchases accounted for 38.33% of the call series traded that day.

27. The following table summarizes the calls Defendants bought shortly before the April 12, 2019 Announcement:

| **Option Series** | **Bought** | **Sold** | **Exercised** | **Strike Price** | **% of Series Traded by Defs** | **Profit (less comms)** |
|---|---|---|---|---|---|---|
| **Cowen Account** | | | | | | |
| APC 15FEB19 | 2/8/19 250 options | | 2/15/19 250 options | $40 | 55.19% | $494,000 |
| APC 18APR19 | 3/22/19 500 options | 4/16/19 500 options | | $45 | 57.34% | $824,500 |
| **Cowen-SG Account** | | | | | | |
| APC 18APR19 | 3/25/19 250 options | 4/16/19 250 options | | $45 | 34.97% | $419,250 |
| **Renaissance Account** | | | | | | |

| Option Series | Bought | Sold | Exercised | Strike Price | % of Series Traded by Defs | Profit (less comms) |
|---|---|---|---|---|---|---|
| APC 17MAY19 | 4/1/19 650 options | | 4/15/19 650 options | $50 | 38.33% | $727,350 |

28.    Based on information provided by another regulatory agency, no other reportable trades in Anadarko options had been placed through the Cowen, Cowen-SG, or Renaissance Accounts in the year leading up to the Announcement.

29.    On February 15, 2019, the account holder in the Cowen Account exercised the right under the 250 calls to acquire 25,000 shares of Anadarko. The account holder transferred all 25,000 shares out of the Cowen account to another U.S. brokerage account. Taking into account the premium paid for the call options, the strike price for exercising the options, and the closing price of Anadarko's stock on April 12, 2019, the exercise of the 250 call options in the Cowen account would generate a net profit of $494,000 less commissions.

30.    On April 16, 2019, the account holder in the Cowen Account sold the March 22nd series options at $17.65 per contract, for a total of $882,500. The account holder made a profit of approximately $824,500 on the trade, less commissions, from an investment of approximately $58,000.

31.    On April 16, 2019, the account holder in the Cowen-SG Account sold the options at $17.65 per contract, for a total of $441,250. The account holder made a profit of approximately $419,250 on the trade, less commissions, from an investment of approximately $22,000.

32.    On April 15, 2019, the account holder in the Renaissance Account exercised the options for the right to acquire 65,000 shares of Anadarko. Taking into account the premium

paid for the call options, the strike price for exercising the options, and the closing price of Anadarko's stock on April 12, 2019, the exercise of the 650 call options in the Renaissance account would generate a net profit of $727,350, less commissions, from an investment of approximately $70,000.

33. With the exception of the 250 calls purchases on February 8, 2019 in the Cowen Account, all of the calls at issue were out-of-the-money options. This is because their strike prices were below the trading price. Therefore, the price of Anadarko's stock had to rise in order for Defendants to make money on these calls.

34. On information and belief, the timing of the earlier February 8, 2019 purchase of calls in the Cowen Account only days after the start of Anadarko's acquisition discussions with Chevron also supports an inference of highly suspicious trading. Although these earlier options were purchased in the money, an individual with inside information about the early merger discussions would nonetheless be incentivized to acquire in-the-money options: if an acquisition was not announced before their expiration, the trader would be able to exercise the options and hold the stock with knowledge that discussions were ongoing and that the stock could be sold, for large profits, after an eventual announcement..

35. There was no hedging of the option purchases—through concurrent option sales—in the Cowen, Cowen-SG, or Renaissance Accounts, even though Defendants purchased a significant percentage of the option series.

36. The timing, size, nature, and profitability of the Defendants' trades, as well as the lack of prior history of significant Anadarko options trading in the subject accounts, make the trades at issue highly suspicious. On information and belief, at the time Defendants purchased

the Anadarko calls, as alleged above, they possessed material, nonpublic information about the contemplated acquisition of Anadarko.

## CLAIM FOR RELIEF

**Exchange Act Section 10(b) and Rule 10b-5 Thereunder
(Against All Defendants)**

37. Paragraphs 1 through 36 are re-alleged and incorporated by reference.

38. On information and belief, at the time Defendants purchased Anadarko call options, as alleged above, they possessed material, nonpublic information about the contemplated acquisition of Anadarko.

39. On information and belief, Defendants used confidential information about the proposed acquisition of Anadarko in breach of a fiduciary duty; were tipped that confidential information by an individual or individuals in breach of a fiduciary duty of trust and confidence; were provided with information that was misappropriated from such an individual in violation of a fiduciary duty to that insider; or misappropriated the confidential information in violation of a fiduciary duty.

40. On information and belief, Defendants: (a) knew, recklessly disregarded, or should have known that their trading was in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, owed to the shareholders of Anadarko, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the contemplated acquisition that had been conveyed to them was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

41. On information and belief, any and all material, nonpublic information that Defendants received concerning a contemplated acquisition of Anadarko, as set forth above, was

11

disclosed to them by a person or persons who tipped such information with the expectation of receiving a benefit.

42. By engaging in the conduct described above, Defendants, singly or in concert with others, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit on any persons.

43. By engaging in the foregoing conduct, Defendants, directly and indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a show cause order and an order freezing assets and granting other ancillary relief, and enter a Final Judgment:

### I.

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## II.

Ordering Defendant to disgorge all illicit trading profits or ill-gotten gains derived from the conduct alleged in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated:  April 29, 2019

Respectfully submitted,

KEEFE M. BERNSTEIN*
bernsteink@sec.gov
B. DAVID FRASER*
fraserb@sec.gov
SECURITIES AND EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2607

*Counsel for Plaintiff*
*Securities and Exchange Commission*

*Not admitted in SDNY, *pro hac vice* application filed herewith.